**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY**

|  |  |  |
|---|---|---|
| **DR. MARKCUS KITCHENS, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **NATIONAL BOARD OF MEDICAL** | ) | **Case No. 5:24-cv-00151-DCR** |
| **EXAMINERS, EDUCATIONAL** | ) | |
| **COMMISSION FOR FOREIGN** | ) | |
| **MEDICAL GRADUATES, AND** | ) | |
| **FEDERATION OF STATE MEDICAL** | ) | |
| **BOARDS,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## NATIONAL BOARD OF MEDICAL EXAMINERS' MOTION TO DISMISS

Defendant National Board of Medical Examiners ("NBME") respectfully moves to dismiss the complaint that plaintiff Markcus Kitchens ("Dr. Kitchens") has filed against NBME, the Educational Commission for Foreign Medical Graduates ("ECFMG"), and the Federation of State Medical Boards ("FSMB"). *See* Complaint, Dkt. 1. A Proposed Order accompanies this motion.

Dr. Kitchens attended medical school in Poland but wants to become a licensed physician in the United States. He has not been able to pass his licensure examinations, however, despite multiple attempts, and has now resorted to filing a frivolous antitrust complaint, *pro se*, against three non-profit entities relating to those examinations. His Complaint asserts nine Counts, each purportedly grounded in the Sherman Act, 15 U.S.C. §§ 1 *et seq*. *See* Dkt. 1 at 44-56. Three Counts are directed at NBME, and three are directed at each of the other two defendants.

Dr. Kitchens' Complaint has been cribbed from a Sherman Act complaint that the U.S. government filed against Apple, the multinational company that makes and sells iPhones and other

electronic products and services. *See* pp. 15-16 *infra*; *see also* Complaint ¶ 102 (reference to "Apple"). This explains why many of his factual and legal allegations are nonsensical. In all events, however, and for reasons discussed more fully below, Dr. Kitchens' claims should be dismissed.

First, Dr. Kitchens' claims against NBME are barred by the doctrine of *res judicata.* He has already sued NBME once before, in a now-concluded case that went to final judgment. He could have asserted his purported antitrust claims there, but he failed to do so. Second, Dr. Kitchens lacks antitrust standing. At most, he has alleged injury to himself, not injury to competition. Third, Dr. Kitchens has failed to state any viable antitrust claim. Finally, the Complaint fails to contain "a short and plain statement" of Dr. Kitchens' claims, in violation of Fed. R. Civ. P. 8.

## BACKGROUND

### I.    The National Board of Medical Examiners and the USMLE

NBME is a non-profit entity based in Pennsylvania whose mission is to help protect the public health through the development of high-quality examinations that evaluate the qualifications of health professionals. *See* www.nbme.org/about-nbme. One of those examinations is the United States Medical Licensing Examination ("USMLE"), a three-Step examination taken by individuals seeking to become licensed physicians in the United States. *See generally* www.usmle.org.

The USMLE assesses a physician's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills, that constitute the basis of safe and effective patient care. Three "Step" exams comprise the USMLE:

- Step 1 assesses whether the examinee understands and can apply important science concepts basic to the practice of medicine, with special emphasis on principles and mechanisms underlying health, disease, and modes of therapy. *See* www.usmle.org/step-exams/step-1.

- Step 2 Clinical Knowledge (Step 2 CK) assesses an examinee's ability to apply medical knowledge, skills, and understanding of clinical science essential for the provision of patient

care under supervision and includes emphasis on health promotion and disease prevention. Step 2 CK assesses whether candidates have the basic patient-centered knowledge and skills that provide the foundation for the safe and competent practice of medicine under supervision. *See* www.usmle.org/step-exams/step-2-ck.

- <u>Step 3</u> assesses whether an examinee understands and can apply medical knowledge essential for the unsupervised practice of medicine, with emphasis on patient management in ambulatory settings. It is the final examination in the USMLE sequence leading to a license to practice medicine without supervision. *See* www.usmle.org/step-exams/step-3.

NBME and FSMB jointly own the USMLE, *see* Declaration of Daniel Jurich, Ph.D. ("Jurich Decl."), ¶ 3, which NBME administers in testing centers operated by a third-party vendor (Prometric). Licensing authorities across the country rely upon the USMLE to help evaluate the qualifications of individuals seeking an initial license to practice medicine. *Id.*, ¶ 4.

## II.    The Federation of State Medical Boards and State Medical Licensure

FSMB is a non-profit membership organization whose members consist of state medical boards within the United States, its territories, and the District of Columbia. The Kentucky Board of Medical Licensure, for example, is a member of FSMB. *See* KRS § 311.530(1) ("There is hereby created in state government an independent board to be known as the State Board of Medical Licensure...."); 201 KAR Ch. 9 ("Board of Medical Licensure"); www.kbml.ky.gov. FSMB's stated mission is to "serve as a national voice for state medical boards, supporting them with services and initiatives that promote patient safety, the integrity of the practice of medicine, access to high-quality health care and regulatory best practices." *See* https://www.fsmb.org/about-fsmb/.

Individuals who want to practice medicine in the United States must be licensed by the jurisdiction in which they wish to practice. Medical licensure takes place in accordance with requirements set forth under state law. These laws vary from state to state, but all states require new licensure candidates to have passed one or more examinations that evaluate their medical knowledge and skills, and all states have chosen to accept successful completion of the three USMLE Step exams as meeting this requirement (with many states, including Kentucky, also

accepting passing results on examinations other than the USMLE as meeting their examination requirements). *See, e.g.,* KRS § 311.571(1)(e) and 2(e) (applicants for licensure must, among other things, have "successfully completed an examination prescribed by the board"); 201 Ky. Admin. Regs. 9:031 (setting forth the examinations and results that the Kentucky Board of Medical Licensure accepts as meeting the statutory examination requirement for physician licensure).

Contrary to what Dr. Kitchens asserts in the "Prelude" to his Complaint (Complaint at 3), NBME, ECFMG, and FSMB do not determine who "qualifies for [medical] licensure" in the United States, and medical professionals are not "governed by the Defendants NBME, ECFMG, and FSMB." State legislatures and state medical boards establish the criteria for licensure, and state medical boards govern the conduct of medical professionals. *See, e.g.*, *Conrad v. Beshear*, No. 3:17-cv-00056-GFVT, 2017 WL 3470917, *5 (E.D. Ky. Aug. 11, 2017) ("The Kentucky Board of Medical Licensure was established as an independent board by the Kentucky legislature to provide for and regulate medical and osteopathic licensure. The Kentucky Legislature tasked the Board with initial licensing and continuing oversight of the practicing physicians in the Commonwealth.") (citations omitted).

### III.    The Educational Commission for Foreign Medical Graduates

Many individuals who take the USMLE are graduates of foreign medical schools. Foreign medical schools, which are attended by both U.S. and foreign citizens, may or may not provide the same type of medical education as accredited U.S. medical schools.

ECFMG is a non-profit organization that evaluates the qualifications of international medical school graduates (IMGs) before they are allowed to participate in graduate medical education (*i.e.*, a residency program) in the United States. *See* www.ecfmg.org/about/. ECFMG certification is "a requirement for IMGs to take Step 3" of the USMLE and "to obtain an unrestricted license to practice medicine in the United States." *Id.*; *see also* KRS § 311.571(2)

("No applicant who is a graduate of a medical or osteopathic school located outside the United States or Canada shall be eligible for a regular license to practice medicine in the Commonwealth unless the applicant: ... (e) Has been certified by the educational commission for foreign medical graduates or by an approved United States specialty board").

## IV.    Dr. Kitchens and His USMLE History

Dr. Kitchens is a resident of Kentucky but attended medical school in Poland. Complaint ¶¶ 86, 93.  He wants to become licensed as a physician in the United States. To do so, he must, among other things, pass the examinations that are required by the state where he wishes to become licensed.  He has taken the USMLE several times in an effort to meet this requirement. *Id*. at ¶ 87.

Because he was an international medical graduate (*id.* ¶ 86), Dr. Kitchens paid his fees to take the USMLE exams to the ECFMG. *Id*. at ¶ 91. As noted above, ECFMG must certify that an IMG is eligible to take the Step examinations and participate in graduate medical education in the U.S. (*i.e.*, to participate in a U.S. medical residency program). Dr. Kitchens also paid other fees to the ECFMG when applying for ECFMG Certification. *Id*. at ¶ 89.

Dr. Kitchens first took the Step 1 exam in February 2022 and failed.[1] He took it again in May 2022 and failed. He took it again in September 2022 and failed. In all three instances, his performance was well below the performance of other examinees. *See* Jurich Decl. Exs. A-B, E.

Dr. Kitchens first took the Step 2 CK exam in May 2022 and failed. He scored 169, which was well below the minimum passing score of 209 and among the lowest scores of all examinees who tested contemporaneously with him. He took Step 2 CK again in June 2022 and again failed (achieving a better score, but still well short of the minimum passing score). *See id.* Exs. C-D.

---

[1]  The Court may take note of Dr. Kitchens' performance on his Step exams in deciding this motion because his Complaint references the exams (*e.g.*, ¶¶ 89, 91, 92) and the exams are at the root of this litigation.  *See Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999).

Dr. Kitchens took the Step 1 exam a fourth time in November 2023, after partially prevailing in a lawsuit against NBME (discussed *infra*) and obtaining a court order that required NBME to allow Dr. Kitchens to take the USMLE with double testing time and other accommodations. He achieved a passing result. *See id.* Ex. F.

Dr. Kitchens took the Step 2 CK exam a third time in December 2023, with double testing time and other accommodations awarded by the Pennsylvania court. He again failed. The minimum passing score for the Step 2 CK exam is currently 214. Dr. Kitchens achieved a score of 186 (again well short of the minimum passing score). *See id.* Ex. G.

To be eligible to take Step 3, a licensure candidate must first pass both Step 1 and Step 2 CK. Because Dr. Kitchens has not done so, he has never taken the Step 3 exam.

**V.    Dr. Kitchens' Prior Lawsuit Against NBME**

Before taking the USMLE Step 1 exam, Dr. Kitchens submitted a request to NBME for double testing time and other testing accommodations, based upon purported diagnoses of Attention-Deficit/Hyperactivity Disorder and test anxiety. He noted on his request form that he had not received accommodations on his college or medical school admissions tests, or while taking courses in college or at medical school, and he submitted limited medical documentation in support of his request. NBME therefore denied the request.[2]

After several unsuccessful test attempts and a second denied accommodation request

---

[2] Examinees take the USMLE under standard conditions, including standard testing time. NBME provides accommodations, however, to individuals who demonstrate that they have a disability within the meaning of the Americans with Disabilities Act. NBME's objective in evaluating accommodation requests is to ensure that "individuals with *bona fide* disabilities receive accommodations, and that those without disabilities do not receive accommodations that they are not entitled to, and which could provide them with an unfair advantage…. [NBME] has a duty to ensure that its examination is fairly administered to all those taking it." *Powell v. NBME*, 364 F.3d 79, 88-89 (2d Cir. 2004).

(supported by the same sparse documentation), Dr. Kitchens sued NBME in the U.S. District Court for the Eastern District of Pennsylvania, alleging that NBME had violated the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and Title VI of the Civil Rights Act. *See* Complaint*, Kitchens v. United States Medical Licensing Examination,* No. 2:22-cv-03301 (E.D. Pa.) (filed Aug. 16, 2022) ("*Kitchens I*") (Dkt. 1) (Ex. A to the Decl. of Caroline Mew).[3] His complaint alleged, among other things, that he attended medical school in Poland; that the USMLE is "jointly owned" by NBME and the FSMB; that he has taken the USMLE several times; that "Defendant USMLE" and "Defendant NBME" violated the Civil Rights Act "by requiring graduates of foreign medical schools to register and certify with the ECFMG as an International Medical Graduate ... in order to register and sit for the Step Board Exams," by "charging [IMG] applicants excessive fees based on their ethnicity," and by "requiring him to register with the ECFMG and charg[ing] him a different rate" than he would have paid if he was a graduate of a U.S. medical school; and that "Defendant USMLE" and that "Defendant NBME" violated Title II of the ADA and the Rehabilitation Act by denying his request for extra testing time and other accommodations.  *See Kitchens I,* Complaint ¶¶ 16, 19-25, 28, 29, 31-51, 54-57, 65-68.

NBME moved to dismiss Dr. Kitchens' complaint. *Kitchens I,* Dkt. 6. Before the motion could be decided, he filed an amended complaint. *Id*., Dkt. 15. The amended complaint abandoned all claims asserted in his original complaint and asserted a single Title III ADA claim. *Id.*

Dr. Kitchens sought a preliminary injunction, *id*., Dkt. 20, which the court denied, *id*.,  Dkt.

---

[3] Dr. Kitchens named NBME as a defendant in the body of his original complaint but captioned the complaint as "*Dr. Markcus Kitchens, Jr. v. United States Medical Licensing Examination.*" After NBME pointed out in its response to the complaint that the United States Medical Licensing Examination is not a legal entity capable of suing or being sued, Dr. Kitchens changed the caption on his First Amended Complaint (Dkt. 15) to *Kitchens v. National Board of Medical Examiners*. The Pennsylvania court, however, did not change the case caption as it appears on the docket.

30. Discovery followed, then a bench trial in May 2023. In a ruling entered on October 31, 2023, the court held that Dr. Kitchens had shown that he is disabled within the meaning of the ADA and entitled to accommodations on the USMLE. *Id.*, Dkt. 94. Notably, the court grounded its holding not on the documentation that Dr. Kitchens had provided to NBME when he requested accommodations, but on testimony and other evidence that Dr. Kitchens generated or presented for the first time during the litigation—information that NBME of course did not consider when it denied his requests for accommodations because it had not been provided. *See id.*, Dkt. 94 at 19.

## VI.    Dr. Kitchens' Current Lawsuit

Dr. Kitchens filed this new lawsuit on the heels—but with no mention—of his prior litigation with NBME in Pennsylvania. He is again complaining about difficulties he has had passing the USMLE and about fees he had to pay to take the test and register with ECFMG, but this time he attributes his struggles to purportedly "anticompetitive" actions of NBME, FSMB, and ECFMG.

It is not clear from Dr. Kitchens' prolix allegations what each defendant has purportedly done in violation of the antitrust laws, or how Dr. Kitchens was impacted. He asserts, for example, that the USMLE is only administered in certified Prometric test centers and was not available for a period of time due to the COVID pandemic (Complaint p. 3 and ¶ 49); NBME takes steps to protect copyrighted USMLE exam materials (*id.* ¶ 40);[4] exam fees have been raised at various times (*id.* ¶ 41); NBME charges for exam study materials (*id.* ¶ 43);[5] NBME charges for score re-

---

[4]  Dr. Kitchens discusses, for example, the case *NBME v. Optima Univ. LLC*, No. 1:09-cv-01043, (W.D. Tenn.). The court granted summary judgment to NBME and FSMB in that case, finding that the defendant willfully infringed copyrighted USMLE material by having individuals secretly copy test questions that were then used in Optima's test prep course. *Id.*, 2011 WL 7615071 (Sept. 29, 2011). Dr. Kitchens does not explain why this case has anything to do with his antitrust claims.

[5]  Dr. Kitchens alleges in the same paragraph, however, that "it is widely recognized ... that UWorld is the premier choice for test preparation when studying for the USMLE." Complaint ¶ 43; *see*

checks (*id.* ¶ 44); NBME only has a certain number of practice exams available at any given time (*id.* ¶ 50);[6] NBME investigates evidence of exam score invalidity (*id.* ¶¶ 52-53);[7] NBME decides how exams will be scored (*id.* ¶¶ 56, 59, 81); NBME discontinued one exam (Step 2 Clinical Skills) that used to be part of the USMLE but still reports Step 2 CS scores for individuals who previously took that exam (*id.* ¶ 82); NBME limits the number of times an examinee can attempt to pass the USMLE Step exams (¶ 68); NBME offers a podcast (*id.* ¶ 72); and IMGs are charged more to take the USMLE than graduates of U.S. medical schools (*id.* ¶¶ 89-92). Dr. Kitchens folds these disjointed allegations into language from an antitrust complaint the government filed against Apple, broadly labels the defendants' conduct as "anticompetitive," but fails to explain why the conduct is anticompetitive or how he was affected.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

---

*also id.*, Ex. 9 (ten pages of material relating to UWorld's test-preparation materials). If UWorld is the "premier choice for [USMLE] test preparation," it is unclear why Dr. Kitchens is complaining about the USMLE study material offered by NBME.

[6] Dr. Kitchens later alleges, however, that NBME offers "countless products and services — Self Assessments, Learning Resources, Practice Questions, and Content Outlines." Complaint ¶ 71.

[7] This allegation by Dr. Kitchens relates to a case in the U.S. District Court for the District of Columbia, *Giri v. NBME*, No. 24-cv-410 (D.D.C.), involving NBME's invalidation of the USMLE scores of 832 individuals based on information it received showing an organized effort to provide unauthorized access to secure exam materials before testing. The *Giri* court denied the plaintiff's motion for a preliminary injunction on her various civil rights claims, finding, among other things, that NBME was likely to succeed on the merits. *Id.*, 2024 WL 756604 (D.D.C. Feb. 23, 2024).

*Id.* "'[T]o survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.'" *Terry v. Tysons Farm, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010) (citation omitted). Although the court must accept factual allegations in the complaint as true, the court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.'" *Id.* (citations omitted). The complaint's "'[f]actual allegations must be enough to raise a right to relief above the speculative level,' and 'state a claim to relief that is plausible on its face.'" *Id.* (citations omitted).

Following *Twombly*, "allegations of parallel conduct and bare assertions of conspiracy no longer supply an adequate foundation to support a plausible § 1 claim." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902-03 (6th Cir. 2009) (affirming Rule 12(b)(6) dismissal of antitrust claims). And even under the more generous pleading standards predating *Twombly*, the Sixth Circuit recognized that "[t]he essential elements of a private antitrust claim must be alleged in more than vague and conclusory terms to prevent dismissal," given the expense and burdensome nature of antitrust litigation." *Foundation for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 530 (6th Cir. 2001) (citations omitted).

On a motion to dismiss, and without converting the motion to a motion for summary judgment, a court may consider documents attached to or incorporated in the complaint, documents referenced in the complaint if they underlie the plaintiff's claims, and public documents of which the Court can take judicial notice. *Greenberg*, 177 F.3d at 514; *Chau v. First Fed'l Bank*, No. 5:10–cv–396–JMH, 2011 WL 1769355, *1 (E.D. Ky. May 9, 2011) (citations omitted) (taking judicial notice of filings in state court proceedings in reviewing a motion to dismiss).

Finally, although courts "'must construe liberally the contents of a *pro se* complaint,'" *pro*

*se* litigants "are not exempt from the ordinary rules that govern civil practice." *Qiu v. Bd. of Ed. of Woodford Cty. Pub. Schools*, No. 5:22-196-DCR, 2023 WL 8099107, *4 (E.D. Ky. Nov. 21, 2023) (citation omitted). "Put in blunt terms, ordinary civil litigants proceeding *pro se* are not entitled to special treatment. They have 'no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.'" *Id.* (citation omitted)

## ARGUMENT

### I.    Dr. Kitchens' Claims Are Barred Under The Doctrine of *Res Judicata*

By the time he filed his prior lawsuit against NBME in August 2022, Dr. Kitchens had paid fees to the ECFMG on multiple occasions and taken the USMLE multiple times. NBME, FSMB and ECFMG were performing the same services then that they perform now. Putting aside for the moment that Dr. Kitchens' antitrust claims are utterly frivolous, the alleged factual predicates for those antitrust claims were equally present in August 2022 as they are now. Dr. Kitchens did not assert these claims in the prior litigation, however, even though that case and this case involve the same core operative facts relating to Dr. Kitchens' attempts to pass the USMLE.

The doctrine of *res judicata* "bars a subsequent action between the same parties or their privies based upon the same claims or causes of action that were or *could have been raised* and litigated in a prior action." *Page v. Monroe City Dep't of Building & Zoning*, 42 Fed. Appx. 760, 761 (6th Cir. 2001) (emphasis added). As the Sixth Circuit has explained:

> *Res judicata* is another name for the doctrine of claim preclusion.… "Under the doctrine of claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" … Claim preclusion applies when: (1) there is a final decision on the merits in the first action by a court of competent jurisdiction; (2) the second action involved the same parties, or their privies, as the first; (3) the second action raises an issue that was actually litigated or that should have been litigated in the first action; and (4) there is an identity of claims between the first and second actions.... "Identity of causes of action means an 'identity of the facts creating the right of action and of the evidence necessary to sustain each action.'"

*Nesselrode v. Sec'y of U.S. Dep't of Educ.*, No. 17-4206, 2018 WL 6975166, *2-3 (6th Cir. 2018) (affirming dismissal and noting that the fourth requirement for the doctrine's application—"an identity of claims"—was met "given 'the substantial overlap in operative facts'" in both cases) (citations omitted); *see also Elam v. Aurora Loan Servs., LLC*,  No. 18-5743, 2019 WL 7603379, *3 (6th Cir. 2019) ("Causes of action are the same for *res judicata* purposes 'where they arise out of the same transaction or a series of connected transactions.'") (citation omitted).

Among other important benefits, the doctrine of *res judicata* "relieve[s] parties of the cost and vexation of multiple lawsuits" and "conserve[s] judicial resources." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The doctrine "is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts....'" *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 401 (1981) (citations omitted).

The four elements required for application of the *res judicata* doctrine are met here: (1) there was a final judgment in the first case that Dr. Kitchens brought against NBME, and the time for any appeal from that judgment has now run, *see Kitchens I*, Dkt. 98 (amended final judgment entered Oct. 31, 2023); (2) insofar as NBME is concerned, this case and *Kitchens I* involve the same parties, NBME and Dr. Kitchens; (3) this case involves claims and issues that could and should have been raised (if at all) in *Kitchens I*; and (4) there is an identity of claims between the claims in this case and the claims in *Kitchens I* "given 'the substantial overlap in operative facts'" for the claims in both cases. *Nesselrode*, 2018 WL 6975166, at *3.

Here, as in *Kitchens I*, Dr. Kitchens alleges that he has taken the USMLE exams multiple times, that he has had to pay higher fees to the ECFMG to take each of his USMLE exams than he would have had to pay if he had attended a U.S. medical school, and that he has had to pay

- 12 -

additional fees to obtain "ECFMG certification." In *Kitchens I*, those factual allegations were made in support of claims under the Civil Rights Act, the Rehabilitation Act, and the ADA, *see* pp. 6-7 *supra*, whereas here they purport to support his antitrust claims, *see, e.g.,* Complaint ¶¶ 86-92, 112, 130. Issues were also raised by Dr. Kitchens during the *Kitchens I* litigation (and are again raised here) regarding how the USMLE is scored, attempt limits, discontinuation of the Step 2 CS exam, and score re-check policies.

Dr. Kitchens' antitrust claims could have been addressed in his prior litigation.[8] The fact that his latest complaint asserts different "'theories of recovery and seeks a different remedy [than his complaint in *Kitchens I*] does not allow [him] to avoid claim preclusion, when those other theories could have been asserted and remedies could have been sought in the earlier action.'" *Rawe v. Liberty Mut. Fire Ins. Co*., 462 F.3d 521, 529 (6th Cir. 2006) (citation omitted). This is precisely the scenario the *res judicata* doctrine is intended to prevent: the vexation of multiple lawsuits against the same defendant, based upon the same core underlying facts and grievances, and with an attendant waste of judicial resources from the duplicative litigation.

## II.   Dr. Kitchens Lacks Antitrust Standing

The Clayton Act gives a right of action to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15(a). An individual who asserts an antitrust claim, however, faces heightened standing requirements. *NicSand, Inc. v. 3M Co*., 507 F.3d 442, 449, 450 (6th Cir. 2007). He must not only demonstrate that the Article III requirements of injury-in-fact, causation, and redressability have been met, he must also show that

---

[8] Plaintiffs in other cases have asserted ADA and antitrust claims in a single complaint.  *See, e.g., Gunawardana v. Am. Vet. Med. Ass'n,* No. 21-1330, 2021 WL 4951697, *1 (7th Cir. 2021) (affirming dismissal of a complaint that asserted antitrust, ADA, and other claims, filed by an individual who had "failed a portion of [the] exam for certifying foreign-educated veterinarians"); *Dunning v. War Mem'l Hosp*., 534 Fed. Appx. 326, 327 (6th Cir. 2013).

the injury is an antitrust injury. *Id.* at 449.

To establish an antitrust injury, antitrust plaintiffs must allege an injury to competition, not just to themselves. *Buyer's Corner Realty, Inc. v. N. Ky. Ass'n of Realtors*, 410 F. Supp. 2d 574, 597 (E.D. Ky.), *aff'd*, 198 Fed. Appx. 485 (6th Cir. 2006). "Antitrust plaintiffs do not suffer antitrust injury merely because they are in a worse position than they would been had the challenged conduct not occurred." *Id.* "Individual injury, without accompanying market-wide injury, does not fall within the protections of the Sherman Act." *Care Heating & Cooling, Inc. v. Am. Std., Inc.*, 427 F.3d 1008, 1014 (6th Cir. 2005). And failure to demonstrate an antitrust injury compels dismissal of an antitrust claim at an early stage, given the burdens of antitrust litigation. *NicSand,* 507 F.3d at 450.

At most, Dr. Kitchens alleges that he has been harmed by various practices that he attributes to NBME or the other defendants and characterizes as anticompetitive—although even that requires a generous reading of his Complaint, which largely fails to link his own situation with any of the conduct he discusses. *See, e.g.*, Complaint ¶¶ 91-92 (alleging that he incurred "thousands of dollars in fees" because of fee increases imposed by the ECFMG); 129 (characterizing NBME's "limitation on exam attempts" and policies for "verifying exam result(s)" as "anticompetitive," and suggesting, but not expressly stating, that he was injured by those policies). Dr. Kitchens does not allege any plausible facts that would support a finding of reduced competition in a relevant market. And because he "alleges only injury to [himself] and does not allege injury to a relevant market," he has failed to allege an antitrust injury, thereby warranting dismissal of his complaint. *Bassett v. Nat'l Collegiate Ath. Ass'n*, 528 F.3d 426, 434 (6th Cir. 2008) (affirming dismissal of claims asserted by an assistant football coach who resigned due to alleged violations of various NCAA rules, which he claimed were anticompetitive: "[W]e agree with the district court that

- 14 -

Appellant's claim fails to allege an antitrust injury sufficient to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)…."); *see also Pawlak v. Nix*, No. 95-5265, 1996 WL 560360, *11 (E.D. Pa. 1996) (dismissing Sherman Act claims filed against the National Conference of Bar Examiners and other defendants by an individual who failed the bar exam and was denied admission to the Pennsylvania bar: "Her Complaint does not describe an injury to competition; rather, plaintiff alleges only an injury to herself. She claims that her opportunity to practice law has been frustrated. That is not by itself, however, an antitrust problem."); *Gilliam v. Nat'l Comm'n for Certif. of Physician Assistants*, 727 F. Supp. 1512, 1514 (E.D. Pa. 1989) (holding that health care professional had not suffered an injury of the type which the antitrust laws were designed to prevent when he was denied a license by the Pennsylvania Board of Medicine after failing a test given by defendant, a national testing service), *aff'd*, 898 F.2d 140 (3d Cir. 1990).

## III.    Dr. Kitchens Has Failed To State An Antitrust Claim

As noted above, Dr. Kitchens' Complaint was cribbed from an antitrust complaint the United States government filed against Apple. This is shown by his failure to remove a reference to Apple from one of the paragraphs in his Complaint;[9] by comparing the Table of Contents in his Complaint with the Table of Contents in the *Apple* complaint;[10] by comparing various identical phrases and sentences found in his Complaint and the *Apple* complaint;[11] and by his unsuccessful

---

[9]  *See* Dkt. 1, ¶ 102 ("The Court has personal jurisdiction over NBME, ECFMG, and FSMB, and venue is proper in this District under Section 12 of the Clayton Act, 15 U.S.C. § 22, and under 28 U.S.C. § 1391, because Apple transacts business and is found within this District.").

[10]  *Compare Kitchens* Complaint, Dkt. 1 at 4 ("Table of Contents"), *with* Complaint at 14 ("Table of Contents"), *United States v. Apple, Inc.*, No. 2:24-cv-04055 (D.N.J.) (filed 3/21/14) (Ex. B to the Decl. of Caroline Mew) ("*Apple* Complaint").

[11]  *Compare, e.g.*, *Kitchens* Complaint ¶ 47 ("By stifling these technologies, and many others, NBME reinforces the moat around its examination monopoly, not by making its products more accessible to examinees, but by discouraging innovation that threatens the exclusivity of the NBME's examination monopoly or the disintermediation of the USMLE. NBME continues to

- 15 -

effort to shoehorn the USMLE exams and services performed by the three non-profit defendants into allegations used in the *Apple* complaint to describe the sale of iPhones and related products and services.[12]

The end result is a complaint that makes no sense whatsoever in the factual context of this case. And Dr. Kitchens compounds the problem by including in his Complaint numerous pages of historical information that has no stated relevance to his claims, *see* Complaint at 6-17 (Dkt. 1), while providing a single page of "Specific Factual Background" that only hints at how his situation relates to the remaining allegations in the Complaint, *id*. at 40. What Dr. Kitchens has failed to provide, however, are allegations sufficient to state an antitrust claim against NBME.

---

expand and shift the scope and categories of anticompetitive conduct such that the cumulative anticompetitive effect of NBME's conduct is even more powerful than that of each exclusionary act standing alone."), *with Apple* Complaint ¶ 59 ("By stifling these technologies, and many others, Apple reinforces the moat around its smartphone monopoly not by making its products more attractive to users, but by discouraging innovation that threatens Apple's smartphone monopoly or the disintermediation of the iPhone. Apple continues to expand and shift the scope and categories of anticompetitive conduct such that the cumulative anticompetitive effect of Apple's conduct is even more powerful than that of each exclusionary act standing alone.").

[12] *Compare, e.g.*, *Kitchens* Complaint ¶ 35 ("The USMLE is a platform. Platforms bring together different groups that benefit from each other's participation on the platform. A food delivery app, for example, is a multisided platform that brings together restaurants, couriers, and consumers. A two-sided platform, for example, may bring together service providers on the one hand and consumers on the other."), *with Apple* Complaint ¶ 49 ("Smartphones are platforms. Platforms bring together different groups that benefit from each other's participation on the platform. A food delivery app, for example, is a multisided platform that brings together restaurants, couriers, and consumers. A two-sided platform, for example, may bring together service providers on the one hand and consumers on the other."); *and Kitchens* Complaint ¶ 70 ("NBME and FSMB may use their USMLE Program monopoly playbook to acquire or maintain power over next-frontier programs and technologies.... As NBME and FSMB grows in its dominance, FSMB and NBME may continue delaying or stifling the innovations of third-party companies in order to lock medical professionals into NBME, FSMB, and ECFMG products."), *with Apple* Complaint ¶ 136 ("Apple may use its smartphone monopoly playbook to acquire or maintain power over next-frontier devices and technologies. As Apple grows its dominance, Apple may continue delaying or stifling the innovations of cross-platform companies, in order to lock users into Apple devices.").

### A.    Dr. Kitchens' Antitrust Claims Against NBME

Dr. Kitchens purports to assert three antitrust claims against NBME, but the exact basis of those claims is unclear. Count I alleges a "Violation of Section 2 of the Sherman Act" but cites to "15 U.S.C. § 1," which is Section 1 of the Sherman Act, not Section 2. Complaint at 44. Count IV also alleges a "Violation of Section 2 of the Sherman Act" and cites to "15 U.S.C. § 2," which is the correct citation for Section 2. *Id*. at 48. Count VII alleges a "Violation of Section 1 of the Sherman Act" but cites to "15 U.S.C. § 13," which is not Section 1 of the Sherman Act. *Id*. at 52. And the declaratory relief that Dr. Kitchens seeks in his Complaint is limited to a declaration that each defendant violated Section 2 of the Sherman Act. *See id*. at 56, ¶¶ A-C.

Based upon the citations provided in the headings for his Counts, and notwithstanding the verbiage that precedes each heading, NBME assumes that Dr. Kitchens purports to assert claims against NBME under the three statutory provisions he cites (15 U.S.C. §§ 1, 2 and 13). He has failed, however, to state a claim under any of the cited provisions.

### B.    Dr. Kitchens Has Failed to State a Claim Under 15 U.S.C. § 1

In relevant part, Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations...." 15 U.S.C. § 1. Despite its broad wording, Section 1 only prohibits agreements that restrain trade unreasonably. *See, e.g., Leegin Creative Leather Prods. v. PSKS, Inc*., 551 U.S. 877, 885 (2007) ("While § 1 could be interpreted to proscribe all contracts … the Court has never taken a literal approach to its language....  Rather, the Court has repeated time and time again that § 1 outlaws only unreasonable restraints.") (citations omitted).

Dr. Kitchens alleges as follows in Count I of his Complaint:

110.   The administration of the United States Medical Licensing Examination (USMLE) in the United States is a relevant antitrust market, and Defendant NBME

has monopoly power in that market for resident medical students and graduates.

111. NBME has willfully monopolized the administration of the USMLE in the United States through an exclusionary course of conduct and the anti-competitive acts described herein. Each of NBME's actions individually and collectively increased, maintained, or protected its assessment monopoly.

112. NBME's anticompetitive acts include, but are not limited to, its contractual restrictions against distribution, and administration of tests that have impeded the medical profession including but not limited to, limitation on exam attempts, restrictions on when test(s) may be taken, validity of exam results, and verifying exam result(s). The areas identified in this complaint reflect a non-exhaustive list of recent anticompetitive acts but as standardized testing and medicine advances, both the administration of the examination impeded and the specific manner of impediment may shift in response to regulatory change consistent with NBME's past conduct.

113. While each of NBME's acts are anticompetitive in their own right, NBME's interrelated and interdependent actions have had a cumulative and self-reinforcing effect that has harmed competition and the competitive process. NBME's anticompetitive acts have had harmful effects on competition and consumers.

114. NBME's exclusionary conduct lacks a procompetitive justification that offsets the harm caused by NBME's anticompetitive and unlawful conduct.

Complaint ¶¶ 110-14 (Dkt. 1). These allegations fail to state a Section 1 claim.

First, Section 1 addresses only "concerted" activity. It does not address the unilateral actions of a single legal entity. And because Section 1 prohibits "only restraints effected by a contract, combination, or conspiracy,' '[t]he crucial question' is whether the challenged anticompetitive conduct 'stem[s] from independent decision or from an agreement, tacit or express.'" *Twombly*, 550 U.S. at 553 (citations omitted). Count I of Dr. Kitchens' complaint does not allege the existence of any contract, combination or conspiracy between NBME and another entity; it attacks the actions of a single entity, NBME. Count I therefore fails to state a Section 1 claim. *Stevens v. Saelinger*, No. 2:10–20–DCR, 2011 WL 350439, *3 (E.D. Ky. Feb. 2, 2011) (dismissing § 1 claim). The fact that NBME has relationships with FSMB and ECFMG does not change this conclusion, because the mere existence of a business relationship does not establish

- 18 -

liability under Section 1. *Apartments Nationwide, Inc. v. Harmon Publ. Co.*, 1996 WL 99806, *3 n.2 (6th Cir. 1996) (noting that plaintiff improperly equated a "working relationship" with a "conspiratorial relationship").[13]

    <u>Second</u>, Count I is also deficient in failing to allege any facts that would plausibly suggest the existence of an unlawful restraint of trade. To determine whether a restraint is unreasonable and thus prohibited by the Sherman Act, courts have traditionally applied two modes of analysis: the rule of reason and the *per se* rule of illegality. Only a limited range of conduct has been found to be *per se* illegal,[14] and Dr. Kitchens does not allege of any such conduct here.

    "Under the 'rule of reason' analysis for determining whether a § 1 Sherman Antitrust violation exists, a plaintiff must show: (1) that the antitrust defendant contracted, combined, or conspired; (2) that the combination or conspiracy produced adverse anticompetitive effects (3) within relevant product and geographical markets; (4) that the objects of and conduct pursuant to that contract or conspiracy were illegal; and (5) that the plaintiff was injured as a proximate result of that conspiracy." *Sancap Abrasives Corp. v. Swiss Indus. Abrasives*, 19 Fed. Appx. 181, 187 (6th Cir. 2001) (citation omitted).

    As noted above, the allegations in Count I do not satisfy the first element of a Section 1 claim because no contract, combination or conspiracy has been alleged. They do not satisfy the second element because no anticompetitive effects have been alleged. They do not satisfy the third

---

[13] *See also Kreuzer v. Am. Acad. of Periodontology*, 735 F.2d 1479, 1488-89 (D.C. Cir. 1984) ("[T]his court will not infer a conspiracy to violate the antitrust laws based on a showing of regular contact between two independent professional associations on general matters of mutual interest and concern....").

[14] *See Med. Center at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 718 (6th Cir. 2019) ("[*Per se*] claims apply only to a limited range of conduct. To be *per se* illegal, a defendant's conduct has to be so obviously anticompetitive that it has no plausibly procompetitive features—a high hurdle for plaintiffs claiming restraint of trade.").

element because, as discussed below, the market alleged by Dr. Kitchens—administration of the USMLE in the United States, Complaint ¶ 110—is not a relevant market for purposes of the antitrust laws. The fourth element is not satisfied because Dr. Kitchens has not alleged any illegal conduct or any illegal object; he simply discusses a series of exam-related policies and practices that—while labeled in a conclusory manner as "anticompetitive"—are entirely unremarkable (*see supra* at 8-9 *and infra* at 22-23. Finally, he has not alleged facts that would support a finding that he was injured as a proximate result of the conduct he purports to challenge. The closest he comes is an allegation that, due to fee increases by the ECFMG, he "has been forced to incur thousands of dollars in fees to participate in the USMLE program." Complaint ¶ 92. Fee increases are not illegal, of course, nor is a requirement that a candidate pay fees to take a licensing examination or to obtain certification of his eligibility to do so.

In short, Dr. Kitchens' Complaint does not "contain sufficient factual matter, accepted as true, to state a [Section 1] claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 279 (2009) (quoting *Twombly*, 550 U.S. at 570) (internal quotations omitted). He offers only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which does "not suffice" to withstand dismissal. *Twombly*, 550 U.S. at 555.

### C.    Dr. Kitchens Has Failed to State a Claim Under 15 U.S.C. § 2

Section 2 of the Sherman Act makes it unlawful for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations...." 15 U.S.C. § 2. Section 2 thus establishes three categories of offenses, commonly termed "monopolization," "attempted monopolization," and "conspiracy to monopolize."

Dr. Kitchens purports to assert a Section 2 "attempted monopolization" claim against

NBME in Count IV of his Complaint, alleging as follows:

> 128.  The administration of the [USMLE] in the United States is a relevant antitrust market, and Defendant NBME has attempted to monopolize that market.
>
> 129.   NBME has attempted to monopolize the administration of the USMLE in the United States through an exclusionary course of ... conduct and the anticompetitive acts described herein. Each of NBME's actions individually and collectively increased NBME's market power in the administration of the USMLE.
>
> 130. NBME's anticompetitive acts include, but are not limited to, its contractual restrictions against distribution, and administration of tests that have impeded the medical profession including but not limited to, limitation on exam attempts, restrictions on when test(s) may be taken, validity of exam results, and verifying exam result(s). The areas identified in this complaint reflect a non-exhaustive list of recent anticompetitive acts but as standardized testing and medicine advances, both the administration of the examination impeded and the specific manner of impediment may shift in response to regulatory change consistent with NBME's past conduct.
>
> 131. While each of NBME's acts are anticompetitive in their own right, NBME's interrelated and interdependent actions have had a cumulative and self-reinforcing effect that has harmed competition and the competitive process. NBME's anticompetitive acts have had harmful effects on competition and consumers.
>
> 132. In undertaking this course of conduct, NBME has acted with specific intent to monopolize, and to destroy effective competition in, the administration of the USMLE in the United States. There is a dangerous probability that, unless restrained, NBME will succeed in monopolizing the administration of the USMLE and assessment market in the United States, in violation of Section 2 of the Sherman Act.

Complaint ¶¶ 128-32.

These allegations fail to state a claim under Section 2 of the Sherman Act. They do not allege facts that would plausibly support a finding of the attempted monopolization of a relevant market, or a conspiracy between NBME and any other entity to monopolize such a market. Instead, they parrot antitrust buzzwords lifted from the complaint in the *Apple* case, with reference to a handful of routine test administration policies.

In the first place, Dr. Kitchens has not alleged a relevant, legally cognizable market that NBME has purportedly attempted to monopolize. "Failure to identify a relevant market is a proper

ground for dismissing a Sherman Act claim." *Nat'l Hockey League Players' Assoc. v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 719-20 (6th Cir. 2003). The market alleged by Dr. Kitchens is "the administration of the [USMLE]", but that is not a statement of a market; it is a statement of what NBME does. Just as it makes no sense to assert that Ford Motor Company has monopolized a market consisting of the sale of new cars that Ford manufactures and sells, it makes no sense to assert that NBME has monopolized the market for the administration of an exam that NBME develops, owns (in conjunction with FSMB), and administers to examinees (through a third-party vendor). "[A] manufacturer cannot monopolize its own product" or "attempt to monopolize its own product." *Lynch Bus. Machines, Inc. v. A.B. Dick Co*., 594 F. Supp. 59, 66 (N.D. Ohio 1984) (citation omitted).[15]

In addition to not identifying a relevant market, Dr. Kitchens has alleged no facts that would plausibly support a finding that NBME has engaged in anticompetitive conduct. He alleges that NBME has "contractual restrictions" relating to the "distribution" and "administration" of the USMLE that have purportedly "impeded the medical profession," but he specifically refers to only four purported "restrictions":

- "limitation on exam attempts,"
- "restrictions on when test(s) may be taken,"
- "[policies regarding] validity of exam results," and
- "[policies regarding] verifying exam result(s)"

Complaint ¶ 130. All of these purported "restrictions" are run-of-the-mill test administration

---

[15] *See also TV Communications Network, Inc. v. Turner Network Television, Inc*., 964 F.2d 1022, 1025-26 (10th Cir. 1992) ("TVCN fails to allege a relevant market which [defendant] is capable of monopolizing. TVCN's amended complaint specifically names the TNT channel as the relevant product market monopolized by TNT. However, a company does not violate the Sherman Act by virtue of the natural monopoly it holds over its own product. Consequently, TVCN has not alleged a relevant market which TNT is capable of monopolizing in violation of the antitrust laws.") (citations omitted) (affirming dismissal of Sherman Act claims), *relied upon in Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 473 (6th Cir. 2005).

policies. Simply stated, they do not reflect an "intent to monopolize, and to destroy effective competition in, the administration of the USMLE," *id*. at ¶ 132, but rather an effort to protect the integrity of USMLE exam results, which jurisdictions across the country rely upon to help evaluate the qualifications of individuals seeking to become licensed physicians.

### D. Dr. Kitchens Has Failed to State a Claim Under 15 U.S.C. § 13

15 U.S.C. § 13 provides, in relevant part, as follows:

> It shall be unlawful for any person engaged in commerce, ... either directly or indirectly, to discriminate in price between different purchasers of commodities like grade and quality, ... where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination...: Provided, That nothing herein contained shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered....

15 U.S.C. § 13(a).

Dr. Kitchens purports to assert a claim against NBME under 15 U.S.C. § 13 in Count VII of his Complaint, alleging as follows:

> 146. The United States Medical Licensing Examination is administered throughout the United States and across the world by NBME and through its partner, ECFMG.

> 147. NBME has attempted to directly or indirectly discriminate in price between the fees associated with the administration of the USMLE in the United States and the anticompetitive acts described herein. Each of NBME's actions individually and collectively increased the NBME's monopoly in the administration of the USMLE.

> 148. NBME's direct and/or indirect discriminate pricing include, but is not limited to, its pricing rates for the eligibility period, administration of STEP 1, administration of STEP 2, eligibility period extension, and nonrefundable fee(s). The areas identified in this complaint reflect a non-exhaustive list of recent anticompetitive acts but as standardized testing and medicine advances, both the administration of the examination impeded and the specific manner of impediment may shift in response to regulatory change consistent with NBME's past conduct.

> 149. While each of NBME's acts are anticompetitive in their own right, NBME's interrelated and interdependent actions have had a cumulative and self-reinforcing effect that has harmed competition and the competitive process. NBME's

anticompetitive acts have had harmful effects on competition and consumers.

150. In undertaking this course of conduct, NBME has acted with specific intent to monopolize, and to destroy effective competition in, the administration of the USMLE in the United States. There is a dangerous probability that, unless restrained, NBME will succeed in monopolizing the administration of the USMLE and assessment market in the United States, in violation of Section 1 of the Sherman Act.

Complaint ¶¶ 146-50.  These allegations fail to state a claim under 15 U.S.C. § 13.

First, Section 13 "applies only to the sale of goods or commodities, not services." *Metro Comm'ns Co. v. Ameritech Mobile Comm'ns, Inc*., 984 F.2d 739, 745 (6th Cir. 1993). The price discrimination alleged by Dr. Kitchens relates to fees that are charged to graduates of foreign medical schools versus the fees charged to graduates of U.S. medical schools. *See, e.g*., Complaint ¶¶ 42, 74, 147-48.  Because this alleged price discrimination relates to fees charged for services and not for the sale of goods, Dr. Kitchens has not stated a claim under 15 U.S.C. § 13.

Second, Dr. Kitchens' allegations do not establish that any difference in USMLE-related fees reflects an intent to limit competition or monopolize a legally cognizable market. Moreover, he alleged market is again the administration of the USMLE, which is not a relevant market.

## IV.    Dr. Kitchens' Complaint Does Not Comply With Fed. R. Civ. P. 8

In addition to the deficiencies identified above, Dr. Kitchens' Complaint suffers from a procedural deficiency: failure to comply with Fed. R. Civ. P. 8.

Dr. Kitchens is proceeding *pro se*. "[A] *pro se* pleading should be held to a less stringent standard than that submitted by an attorney.... However, Federal Rule of Civil Procedure 8 ... imposes limits on the degree of latitude afforded to *pro se* litigants." *Pickle v. Stine*, No. 6:07–119–DCR, 2007 WL 1173028, *3-4 (E.D. Ky. Apr. 19, 2007).

Rule 8(a)(2) "requires 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds

upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting Rule 8). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "A district court has the power to dismiss a complaint when a plaintiff fails to comply with ... Rule 8(a)(2)'s 'short and plain statement' requirement." *Pickle*, 2007 WL 1173028 at *3 (dismissing *pro se* complaint that, as here, contained "nonsensical accusations" from papers filed in other cases, and stating that "[a]ny case filed in this district should be based upon the facts and the law of a particular situation").

Dr. Kitchens' Complaint does not contain a "short and plain statement" of his claims using "simple, concise, and direct" allegations. The Complaint is 151 pages long, with attachments. *See* Dkt. 1. The body contains 57 pages, and there are 27 attachments. Many allegations relate to the histories of the three defendants, with no identified relevance to Dr. Kitchens' claims. *See* Complaint at 6-17. There are also numerous allegations that have been lifted from the *Apple* Complaint rather than being based "upon the facts and law of [the] particular situation" now before the Court. As a result, the Complaint contains "allegations that are extremely hard to understand and legal claims that are too vague to track." *Murray v. Abbney*, No. 5:19-369-KKC, 2019 WL 5424952, *1 (E.D. Ky. Oct. 23, 2019). Dismissal is warranted for this additional reason. *Id.* (dismissing *pro se* complaint for violating Rule 8).

## **CONCLUSION**

The Court should dismiss Dr. Kitchens' complaint, with prejudice.

Dated: August 5, 2024               Respectfully submitted,

*/s/ Robert A. Burgoyne*
Robert A. Burgoyne — admitted *pro hac vice*
Caroline M. Mew — admitted *pro hac vice*
Perkins Coie LLP
700 13th Street, NW, Suite 800
Washington, DC 20005
Phone: (202) 654-1744
rburgoyne@perkinscoie.com
cmew@perkinscoie.com

*Attorneys for NBME*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 5, 2024, a true and correct copy of the foregoing document was served on plaintiff Markcus Kitchens, Jr. by regular mail, postage prepaid, sent to the following address:

> Dr. Markcus Kitchens, Jr.
> 622 Hampton Way #2
> Richmond, KY 40475

A courtesy copy of this document was also emailed on this date to Dr. Kitchens at the following email address:

> markzwanz@gmail.com

*/s/ Robert A. Burgoyne*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2024, a true and correct copy of the foregoing motion and the documents filed in support thereof (declarations, exhibits, and proposed order), which were originally filed at Docket No. 13, were electronically filed via the Court's CM/ECF system, which will send notification to all registered users, and were served on plaintiff Markcus Kitchens, Jr. by regular mail, postage prepaid, sent to the following address:

Dr. Markcus Kitchens, Jr.
622 Hampton Way #2
Richmond, KY 40475

A courtesy copy of the documents were also mailed on this date to Dr. Kitchens at the following email address: markzwanz@gmail.com

*/s/ Robert A. Burgoyne*