UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| MARKCUS KITCHENS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 24-151-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NATIONAL BOARD OF MEDICAL | ) | **MEMORANDUM OPINION** |
| EXAMINERS, et. al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Markus Kitchens, Jr., filed this lawsuit on June 6, 2024, asserting claims against the National Board of Medical Examiners, Educational Commission for Foreign Medical Graduates, and Federation of State Medical Boards.  [Record No. 1] The plaintiff alleges that the three defendants conspired to monopolize the administration of the United States Medical Licensing Examination and the administration of assessment tools similar to the United States Medical Licensing Examination in violation of federal antitrust trust laws. Each defendant has moved to dismiss Kitchens' Complaint. [Record Nos. 16, 21, and 28] After the defendants' motions were filed, Kitchens moved for leave of court to file an Amended Complaint.  [Record No. 35] Through the Proposed Amended Complaint, Kitchens seeks to correct defects the defendants identified and assert an additional claim against the National Board of Medical Examiners.

For the reasons explained more fully below, the defendants' motions to dismiss will be granted and Kitchens' motion to amend his Complaint will be denied.

- 1 -

## I. Background

Kitchens graduated in January 2021 from the Medical University of Lublin in Poland. Although while he seeks to become a licensed physician in the United States, he has not been able to pass the United States Medical Licensing Examination ("USMLE"). The USMLE consists of three "step" exams designed to assess whether an applicant has the requisite skills to practice medicine in this country. Step One tests whether an examinee understands and can apply basic science concepts to the practice of medicine. Step Two assesses an examinee's ability to apply medical knowledge, skills, understanding of clinical science, and addresses whether a candidate has the basic patient-centered knowledge and skills for safe and competent practice of medicine. Finally, Step Three assesses whether an examinee understands and can apply medical knowledge essential for the unsupervised practice of medicine. [Record No. 16 at p. 2]

All fifty states and the District of Columbia require applicants to pass the USMLE or another approved licensing exam before obtaining a medical license. *See, e.g.*, Ky. Rev. Stat. Ann. § 311.571 (a)(1)(e) ("No applicant . . . shall be eligible for a regular license to practice medicine in the Commonwealth unless the applicant . . . [h]as successfully completed an examination prescribed by the [Kentucky Board of Medical Licensure]). An applicant can apply for licensure to a state board once the applicant has passed Step Three. Individuals wishing to practice medicine must be licensed in the jurisdiction in which they wish to practice, and the requirements for obtaining licensure take place in accordance with state law requirements.

The defendants are the National Board of Medical Examiners ("NBME"), the Educational Commission for Foreign Medical Graduates ("ECFMG"), and the Federation of

State Medical Boards ("FSMB").  All three entities are nonprofit organizations and together, they are responsible for administering the USMLE and verifying the credentials of graduates of foreign medical schools who wish to practice medicine in the United States.  Specifically, the NBME along with the FSMB own the USMLE and administer the test throughout the United States.  The FSMB is a membership-based organization comprised of state medical boards within the United States designed to serve as a national voice for state boards.  It supports their efforts to promote patient safety and assists with medical licensure.  The ECFMG evaluates the qualifications of international medical school graduates before they enter residency programs in the United States.  An international medical school graduate must be ECFMG certified to take Step Three of the USMLE and "to obtain an unrestricted license to practice medicine in the United States."  Ky. Rev. Stat. Ann. § 311.571(2).

Kitchens was initially administered the Step One exam in February 2022; however, he failed to achieve a passing score.  He failed the exam two other times in May and September 2022.  And he failed the Step Two exam in May and June 2022.  Following these unsuccessful attempts to pass the Step One and Step Two exams, Kitchens sued the NBME on August 16, 2022, in the United States District Court for the Eastern District of Pennsylvania.  *Kitchens v. United States Medical Licensing Examination*, No. 2:22-cv-03301, 2023 WL 7230400 (E.D. Pa. 2022).  He claimed the NBME violated the Civil Rights Act "by requiring graduates of foreign medical schools to register and certify with the ECFMG as an International Medical Graduate . . . to register and sit for the Step Board Exams," by "charging applicants excessive fees based on their ethnicity," and by "requiring him to register with the ECFMG and charg[ing] him a different rate" than graduates of medical schools in the United States.  *Id.* at Record No. 1 ¶¶ 16, 19-25, 28, 29, 31-51, 54-57, 65-68.  NBME moved to dismiss Kitchens'

- 3 -

Complaint. Then, using a similar strategy to the one employed here, Kitchens filed an amended complaint, withdrawing his claims, but asserting a Title III ADA claim which contended that he was entitled to accommodations on the USMLE. Following a four-day bench trial, that court held that Kitchens was disabled as defined under the ADA and should receive the requested exam accommodations.

Having received accommodations, Kitchens took the Step One exam a fourth time in November 2023, finally obtaining a passing score. He also took the Step Two exam a third time in December 2023 but once again could not achieve a passing score. Kitchens has not taken the Step Three exam because a candidate first must pass the Step One and Step Two exams.

Kitchens filed this civil action on June 6, 2024. [Record No. 1] Each defendant moved to dismiss Kitchens' complaint. [Record Nos. 16, 21, and 28] After full briefing of the motions to dismiss, Kitchens sought leave to file an Amended Complaint. [Record No. 35] Kitchens' original Complaint consists of fifty-seven pages and asserts that the three defendants engaged in exclusionary conduct and used monopoly power to insulate themselves from competition and limit potential medical licensing alternatives for aspiring medical professionals. The original Complaint contains nine counts asserted against all three defendants: (Counts 1-3) violation of Section 2 of the Sherman Act 15 U.S.C. § 1; (Counts 4-6) violation of Section 2 of the Sherman Act 15 U.S.C. § 2; and (Counts 7-9) violation of Section 1 of the Sherman Act, 15 U.S.C. § 13.

The initial complaint suffers from two significant pleading deficiencies. First, nowhere in its fifty-seven pages does Kitchens outline a short and plain statement demonstrating that he is entitled to relief as required by Rule 8 of the Federal Rules of Civil Procedure. Second,

the Complaint does not provide a basis for an antitrust claim. Instead, it begins with extensive background information about the history of medical licensure. The Complaint contains numerous conclusory allegations suggesting that the defendants have conspired to monopolize the administration of medical licensing exams. However, it does not support a cognizable antitrust theory.

Kitchens describes conduct such as ownership of exam materials, charging fees for (and limiting the release of) study materials, raising exam fees, limiting the number of times applicants may sit for an exam, limiting the locations applicants may sit for an exam, and charging international medical students more to sit for the USMLE than graduates of medical schools in the United States, but he does not explain how these actions amount to antitrust violations. Further, the Complaint is filled with conclusory statements describing this conduct as anticompetitive, but the plaintiff does not explain how these actions, taken individually or collectively, harm competition or consumers in violation of the antitrust laws.

## II. Standard of Review

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556). The Court must look to the substance of the entire complaint to determine if the claims are properly asserted and must be "construed so as to do justice." Fed. R. Civ. P. 8(e). And while a complaint need not contain detailed factual allegations, a plaintiff must provide more than

- 5 -

mere labels and conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Although a plaintiff is not required to plead facts showing that a defendant is likely to be responsible for the harm alleged, he or she must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Simply put, the plaintiff must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (citing *Twombly*, 550 U.S. at 555).

### A. Kitchens' claims against the NBME are barred by the doctrine of res judicata.

The doctrine of *res judicata* "bars a subsequent action between the same parties or those in privity based upon the same claims or causes of actions that were or could have been raised and litigated in a prior action." *Page v. Monroe City Dep't of Building & Zoning*, 42 Fed. Appx. 760, 761 (6th Cir. 2001). For claim preclusion to apply, a party must demonstrate that "(1) there is a final decision on the merits in the first action by a court of competent jurisdiction; (2) the second action involved the same parties, or their privies, as the first; (3) the second action raises an issue that was actually litigated or that should have been litigated in the first action; and (4) there is an identity of claims between the first and second actions." *Nesselrode v. Sec'y of U.S. Dep't of Educ.*, No. 17-4206, 2018 WL 6975166, *2-3 (6th Cir. 2018). Two causes of action are the same for purposes of *res judicata* if "they arise out of the same transaction or a series of connected transactions." *Elam v. Aurora Loan Servs., LLC*, No. 18-5743, 2019 WL 7603379, *3 (6th Cir. 2019). The doctrine benefits both the court and parties as it "relieve[s] parties of the cost and vexation of multiple lawsuits" and "conserve[s] judicial resources." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

Kitchens' claims against the NBME are barred by the doctrine of *res judicata.* He filed suit against the NBME in a court of competent jurisdiction (i.e., the U.S. District Court for the Eastern District of Pennsylvania. *Kitchens v. United States Medical Licensing Examination*, No. 2:22-cv-03301 (E.D. Pa. 2022)), and that case was resolved through a final judgment on October 31, 2023. Further, the time to appeal the decision in that case has expired.

The remaining prerequisites for r*es judicata* also have been met. Kitchens' first suit did not involve the ECFMG or the FSMB, but regarding the NBME, it involved the same parties as the present suit. The third element is met because any related claims Kitchens may have against NBME could have been raised in the Pennsylvania litigation. Finally, the fourth element is satisfied because there is an identity of claims between the cases as both arose under the same set of operative facts.

The first case involved a Civil Rights Act, Rehabilitation Act, and ADA claims arising out of Kitchens having to take the USMLE multiple times, having to pay higher fees to take each of the USMLE exams than he would if he had attended a U.S. medical school, and the additional fees he had to pay for ECFMG certification. He also raised issues regarding the scoring of the USMLE, limits on the number of times applicants can take the exam, and policies for re-scoring the exam.

Kitchens now seeks to recycle many of the same facts he alleged in the earlier litigation to support his new antitrust claims. As he does here, he discussed the NBME's power over granting accommodations, grading the licensing exams, fee rates, and ECFMG certification in the prior litigation. Kitchens could have asserted his antitrust claims against NBME in the Pennsylvania case but instead now attempts to use the same facts to support a different theory of recovery. However, a party cannot avoid claim preclusion by bringing a different theory of

recovery and seeking a different remedy when the new theory "could have been asserted and [other] remedies could have been sought in the earlier action." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529 (6th Cir. 2006). This is the exact situation concerning Kitchens' claims against NBME. Kitchens could have brought his antitrust claims in the Pennsylvania litigation, and he cannot get another "bite at the apple" by bringing them here.

### B. The plaintiff's Complaint does not meet the federal pleading standard which requires a short and plain statement of the claim for relief.

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8. At a minimum, it must provide the defendants and the court "the grounds upon which [the claims] rest." *Kensu v. Corizon, Inc.*, 5 F.4th 646, 650 (6th Cir. 2021). The rule further "proscribes . . . obfuscation of the plaintiff's claims" such that the court and defendant are left trying to identify what the plaintiff is alleging. *Id. See also Siguel v. King Farm Citizens Assembly, Inc.*, No. CV GLS-22-672, 2024 WL 3302672, at *5 (D. Md. July 3, 2024) ("a plaintiff's complaint that is confusing, rambling, vague, and/or ambiguous fails to plausibly allege entitlement to relief and contravenes Fed. R. Civ. P. 8(a)). A complaint should provide "fair notice of what the . . . claim is and grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Kitchens' Complaint is not only exceedingly lengthy, it also is difficult to follow. The Complaint contains extensive background information about the history of medical licensure, examination fees, test preparation materials, the number of times an applicant may take an exam, and numerous other facts that do not relate to an antitrust claim. Further, it contains numerous assertions about "platforms," contains extensive conclusory statements that Kitchens does not support with facts. And it contains other nonsensical allegations that do not

have any relation to the plaintiff's underlying theory of relief.[1]  At no point, however, does the pleading indicate how the defendants use the exam and state-mandated medical licensing requirements to suppress competition.  The Complaint simply makes conclusory statements that the defendants have violated federal antitrust laws, leaving the reader confused regarding the basis for Kitchens' underlying theory of relief.

Although the plaintiff is proceeding *pro se* and as such, his Complaint is held to a less stringent standard than formal pleadings drafted by lawyers, it nevertheless must meet minimum requirements under the Federal Rules of Civil Procedure.  And when (such as here) it does not, the Court should deny leave to amend if amendment would be futile.  *Shapiro v. Fid Invs. Institutional Operations Co.*, 142 F. Supp. 3d 535, 542 (E.D. Ky. 2015).  Kitchens fails to meet the minimum pleading requirements under Rule 12(b)(6) of the Federal Rules of Civil Procedure because it is not clear what specific actions the defendants have taken that supposedly violate antitrust laws.  While a reader would be aware that he is bringing an antitrust claim, the theory behind the claims and facts supporting them do not provide any context, leaving the defendants and Court to guess regarding Kitchens' basis for relief.

### C.    Kitchens' Complaint fails to allege a cognizable antitrust injury.

Even if Kitchens had complied with Rule 8's requirements, his Complaint would not survive a motion to dismiss because the plaintiff does not allege sufficient facts to support a cognizable antitrust injury.  Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a

---

[1]    The defendants note that it appears significant portions of the plaintiff's Complaint were lifted from the Department of Justice's antitrust suit against Apple.  *United States et al., v. Apple Inc.*, Civil Action No. 2: 24-04055 (D. N.J), Dkt. No. 1 (3/21/24). Although the Court notes the pleadings contained extensive similarities, the undersigned need not address this contention to resolve the pending motions.

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And to state a plausible claim for relief, a plaintiff must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A complaint must contain either direct or inferential allegations respecting "all material elements to sustain a recovery under some viable legal theory." *Terry v. Tysons Farm, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010). While the Court must accept the complaint's factual allegations as true under Rule 12(b)(6), it "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level,' and 'state a claim to relief that is plausible on its face.'" *Id.*

In the case of antitrust litigation, "allegations of parallel conduct and bare assertions of conspiracy no longer supply an adequate foundation to support a plausible § 1 claim." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902-03 (6th Cir. 2009). It is particularly important that "[t]he essential elements of a private antitrust claim must be alleged in more than vague and conclusory terms to prevent dismissal," given the expense and burdensome nature of antitrust litigation. *Foundation for Interior Design Educ. Research v. Savannah Coll. Of Art & Design*, 244 F.3d 521, 530 (6th Cir. 2001). Further, *pro se* litigants "are not exempt from the ordinary rules that govern civil practice" or "entitled to special treatment." *Qiu v. Bd. of Ed. Of Woodford Cty. Pub. Schools*, Civil Action No. 5: 22-196-DCR, 20234 WL 8099107, *4 (E.D. Ky. Nov. 21, 2023).

A plaintiff must allege the existence of an antitrust injury to demonstrate that he has standing to bring an antitrust claim. *Buyer's Corner Realty, Inc. v. N. Ky. Ass'n of Realtors*,

410 F. Supp. 2d 574, 597 (E.D. Ky. 2006). To demonstrate the existence of an antitrust injury, a plaintiff must show that a defendant's action has harmed competition, not just an individual competitor. *Midwest Agency Servs., Inc. v. JP Morgan Chase Bank, N.A.,* Civil Action No. 2: 09-165-DCR, 2010 WL 935450, at *4 (E.D. Ky. Mar. 11, 2010) (Reeves, J.); *Brown Shoe Co. v. U.S.*, 370 U.S. 294, 320 (1962). A litigant must first define the market in which the harm has occurred to identify harm to competition, *CBC Cos., Inc. v. Equifax, Inc.*, 561 F.3d 569, 572 (6th Cir. 2009) (affirming dismissal of Sherman Act claim when "complaint fails to allege key facts to substantiate an antitrust injury – that is, that competition in the [relevant] market decreased due to [defendant's conduct]"). "The burden is on the antitrust plaintiff to define the relevant market." *Worldwide Basketball & Sport Tours, Inc. v. Nat'l Collegiate Athletic Ass'n*, 388 F.3d 955, 962 (6th Cir. 2004).

Kitchens fails to allege a sufficient basis for standing to bring a claim for an antitrust injury as his Complaint does not explain how the defendants' actions constitute an injury to competition. He alleges he has been harmed individually by the defendants' actions (which he believes are anti-competitive), but he does not explain how the defendants' actions are anti-competitive. While his complaint contains nine counts, he has not adequately alleged a plausible basis for any of these claims.

### D. Kitchens has not alleged sufficient facts to show the defendants' actions violated Section 1 of the Sherman Act.

The Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations . . ." 15 U.S.C.S. § 1. Despite this broad language, courts have held that it only applies to agreements that unreasonably restrain trade. *See Standard Oil Co. of New*

- 11 -

*Jersey v. U.S.*, 221 U.S. 1, 59 (1911). Further, courts apply two methods of interpretation for Section 1 Sherman Act claims: the rule of reason and the *per se* rule of illegality. Kitchens' Section One claim fails under either method of analysis.

> **E.    Kitchens has not alleged facts sufficient to demonstrate that the defendants committed *per se* violations of Section One of the Sherman Act.**

Courts have found only a handful of actions to be *per se* illegal under antitrust laws, namely price fixing. *See Arizona v. Maricopa County Medical Soc.*, 457 U.S. 332, 332 (1982). To be *per se* illegal, the "conduct has to be so obviously anticompetitive that it has no plausible procompetitive features- a high hurdle for plaintiffs claiming a restraint of trade." *Med. Center at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 718 (6th Cir. 2019).

Kitchens has not made sufficient allegations of *per se* illegal activity. He discusses at length the way the defendants work together throughout the licensing process, but there is nothing inherently illegal about contracting with another entity unless the entities agree to fix prices. In short, Kitchens has not alleged sufficient facts to demonstrate the type of collusive, anticompetitive, conduct necessary to establish a *per se* violation.

> **F.    There is no basis for Kitchens' claim that the defendants violated Section One of the Sherman Act.**

Ordinarily, Courts apply a rule of reason analysis for claims arising under Section One of the Sherman Act. This requires a plaintiff alleging a Section 1 violation to assert and demonstrate: (1) that the antitrust defendant contracted, combined, or conspired; (2) that the combination or conspiracy produced adverse anticompetitive effects (3) within relevant product and geographical markets; (4) that the objects of conduct pursuant to that contract or conspiracy were illegal; and (5) that the plaintiff was injured as a proximate result of that conspiracy. *Sancap Abrasives Corp. v. Swiss Indus. Abrasives*, 19 Fed. Appx. 181, 187 (6th

- 12 -

Cir. 2001).  But Kitchen's allegations are insufficient to show any of the prerequisite elements for a Section One Sherman Act violation.

As discussed above, Kitchens repeatedly says the various defendants entered agreements to work together and then repeats the conclusory allegation that the defendants entered these agreements to gain control of the medical licensure market and that he has been injured due to these agreements.  He does not allege the defendants have engaged in any illegal activity, but simply asserts that these actions are anticompetitive without further explanation. As described in greater detail below, he also fails to identify a relevant market because the market for "administration of the USMLE" is not a cognizable market as it is nothing more than a regulatory scheme under state law.

Finally, even if the administration of the USMLE were a cognizable market, Kitchens does not allege that this is a market he competes in or seeks to enter.  The harms he alleges he suffered all result from him having to pay fees to sit for another exam or supposed damage to his professional reputation.  Simply put, even if there was a "market for the administration of the USMLE," the injuries he supposedly incurred have nothing to do with any agreement between the defendants.

### G.    Kitchens' allegations are insufficient to show the defendants violated Section II of the Sherman Act.

Under Section II of the Sherman Act, it is unlawful for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or within foreign nations…" 15 U.S.C. § 2.  To bring a claim under Section II, a plaintiff must first define the relevant market and then show the defendants' actions harmed competition in the relevant

market.  *See Baffert v. Churchill, Inc.*, No. 3:22-cv123-RGJ, WL 2089221, at *10 (W.D. Ky. Feb. 17, 2023) ("Plaintiffs have failed to demonstrate any 'decrease in competition' . . . Because Defendants' 'alleged actions do not affect economic competition in [the relevant market],' Plaintiffs have failed to allege an antitrust injury.").  The relevant market refers to the "market within which the alleged anticompetitive effects of the defendant's actions occur." *Worldwide Basketball & Sport Tours, Inc. v. Nat'l Collegiate athletic Ass'n*, 388 F.3d 955, 962 (6th Cir. 2004).

Failure to allege a relevant market is proper grounds "for dismissing a Sherman Act claim."  *Nat'l Hockey League Players' Assoc. v Plymouth Whalers Hockey Club*, 325 F.3d 712, 719-20 (6th Cir. 2003).  Once a plaintiff has defined the market, he or she must show that the defendant has engaged in anticompetitive conduct capable of harming competition.  *Spirit Airlines, Inc. v. Northwest Airlines, Inc.*, 431 F.3d 917, 932 (6th Cir. 2005).  Conduct that is anticompetitive or exclusionary is conduct that is "reasonably capable of creating, enlarging or prolonging monopoly power by impairing the opportunities of rivals" and does "not benefit consumers at all."  *J.B.D.L. Corp. v. Wyeth-Ayerst Lab'ys Inc.*, No. 01-cv-00704, 2005 WL 1396940, at *12 (S.D. Ohio June 13, 2005).

Kitchens fails to define a relevant market in this case.  He alleges the relevant market is the "administration of the [USMLE]" or, alternatively, "the administration of the [USMLE] and assessment tools similar to the USMLE."  [Record No. 1, ¶¶ 116 and 134] But as discussed below, medical licensure is a creation of state law.  As it has done, The Kentucky State Medical Board has the authority to issue regulations related to exam requirements, such as passing score requirements, attempt limits, and exam administration fees.  201 KAR 9:024; 201 KAR 9:031; 201 KAR 9:041. Aspiring medicals seeking to practice medicine in Kentucky are not afforded

multiple ways to obtain their license and are required to take the USMLE. This is because medical licensure is required by state law for aspiring medical professionals, not anticompetitive action by the defendants that prevents the development of alternative medical licensing mechanisms. Kentucky has the authority to promulgate licensing requirements as it sees fit and does not need to create "a marketplace" of various means of licensing.

Further, Kitchens provides no relevant information about constraints on the market for "administration of the USMLE" beyond the requirements imposed by state law. The plaintiff does not describe potential competing licensure tests or test preparation services. He notes that previously each of the three defendants had its own medical licensing exam; however, at the present time, all work collaboratively to administer the USMLE and administer other licensing requirements. This is not problematic as a party cannot monopolize its own product. *Dunn & Mavis*, *Inc. v. Nu-Car Driveway, Inc.*, 691 F.2d 241, 244 (6th Cir. 1982). The fact that these entities work together to streamline medical licensing according to state law does not mean they are running afoul of antitrust law.

Kitchens also does not provide any information about the other participants in the alleged market for the "administration of the USMLE." Throughout the Complaint, Kitchens lists individuals supposedly harmed by the alleged monopoly, namely medical students, medical graduates, medical schools, state medical boards, financing companies, test preparation companies, and test administration services. However, he does not suggest these entities perform the same services as the defendants (i.e., administering an exam for medical licensure and verifying applicants' credentials). Kitchens also has not expressed a desire to compete in this market, making it unclear what the market is, and how he or the other supposed

- 15 -

market participants are harmed.  He has not defined the market, and for the reasons explained above his Section II Sherman Act claims cannot survive the defendants' motion to dismiss.

Even if Kitchens had properly defined a market, he has not sufficiently alleged the defendants have engaged in exclusionary conduct.  Kitchens states that the defendants' monopoly "has specifically harmed competition."  [Record No. 1, at ¶¶ 113, 119, and 125] In support, he lists the exam, licensing procedures, and requirements and states the defendants maintain the sole ability to grade attempt(s) on the USMLE Examinations, determine what constitutes an attempt; determine who is eligible for accommodation(s); what is considered a passing/failing score, and exercise sole control over who may/may not become a licensed medical practitioner. Aside from the fact that these are not actions like refusals to deal or predatory pricing that impair the opportunities of competitors, there is no indication that the defendants' policies harm consumers—in this case, licensure applicants, beyond having to abide by state law.  As discussed in greater detail below, the defendants' policies are subject to active supervision by state medical licensing boards, indicating that many of their policy decisions are made at the direction of (or at least in consultation with) state licensing boards that are subject to public oversight, thus further supporting that their actions are not taken with the intent to harm the medical licensing market.

Further, Kitchens' contention that the defendants' policies harm consumers defies reason.  In Kentucky and across the country, many physicians from diverse backgrounds have passed state-mandated licensing exams, evidencing that defendants and their policies are not suppressing competitors but simply facilitating state-mandated licensing procedures.  There is no supporting claim that the defendants' policies hurt competition; instead, Kitchens focuses solely on injuries to himself.  The injuries he describes are not a result of any anticompetitive

conduct on the part of the defendants but rather Kitchens' inability to meet the requirements for medical licensure under Kentucky law.

Other circuits have held that an applicant's failure to pass a board certification exam given by a private certifying board "has nothing to do with the antitrust laws" because it focused only on harm to the applicant, not to competition. *Sanjuan v. Am Bd. Of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). Additionally, the FTC has repeatedly emphasized the importance of licensure in the health care space, noting safety "considerations may be especially important in the health professions, where the risk of harm from an unqualified provider may be considerable and consumers may have difficulty in determining whether a provider is qualified." FTC, *Policy Perspectives: Options to Enhance Occupational License Portability* (Sept. 2018).

In summary, the defendants' actions are not anticompetitive, and even if they were, they have not harmed Kitchens. Kitchens has failed to define a relevant market and identify exclusionary conduct taken by defendants in support of his claims under 15 U.S.C. § 2.

### H. Kitchens fails to allege sufficient facts to show a valid price discrimination claim.

Three counts in the plaintiff's Complaint allege that the defendants have engaged in unlawful price discrimination in violation of 15 U.S.C. § 13(a). To prevail on a price discrimination claim, an antitrust plaintiff must show that a defendant has discriminated in price between different purchasers of commodities "of like grade and quality." *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 799 (6th Cir. 2012). A plaintiff bears the burden of establishing that the goods are of like grade and quality. *Id.* Price discrimination claims "appl[y] only to the sale of goods or commodities, not services." *Metro Commc'ns Co. v. Am.*

*Mobile Commc'ns, Inc.*, 984 F.2d 739, 745 (6th Cir. 1993).  In the Sixth Circuit, courts inquire as to whether a product can be "produced, sold, or stored, even in small quantities," to determine whether something is a good or commodity.  *Id.* at 745.

Kitchens' price discrimination claims fail because he has not described an actionable good or commodity and because the services he describes are not "of like grade and quality." The price discrimination alleged by Kitchens is for ECFMG certification and the fees associated with taking the USMLE.  These are not commodities for which a plaintiff can bring a price discrimination claim, and Kitchens does not attempt to allege that they are such a type of "commodity."  Further, his claim would still fail even if these items were commodities. Kitchens discusses at length the different processes foreign medical students must follow to apply for residency and state licensure.  It stands to reason that the three defendants would charge different fees for international applicants, given there are specific costs associated with verifying foreign medical school credentials, sponsoring visas, and other similar tasks.  The costs associated with administering the exam and licensing international medical graduates are simply different than those for domestic graduates.  Kitchens states that these pricing disparities inhibit competition within the market for the administration of the USMLE, but he cannot prevail on this claim as the market for the administration of the USMLE is not a legally cognizable market.

## I. *Parker* Immunity bars Kitchens' antitrust claims.

Even if Kitchens had a viable antitrust claim, it would be barred under the State Action Immunity Doctrine, known as *Parker* Immunity.  The United States Supreme Court has held that the Sherman Act does not apply to programs created under state law.

We find nothing in the language of the Sherman Act or in its history which suggests that its purposes was to restrain a state or its officers or agents from activities directed by its legislature . . . The state in adopting and enforcing the [challenged] program made no contract or agreement and entered into no conspiracy in restraint of trade or to establish monopoly but, as sovereign, imposed the restraint as an act of government which the Sherman Act did not undertake to prohibit.".

*Parker v. Brown,* 317 U.S. 341, 350-52 (1943).

To show the Sherman Act is inapplicable to a private entity's action under *Parker*, a party must demonstrate that the challenged actions (a) are taken pursuant to affirmatively expressed state policy and (b) are actively supervised by the State. *Calif. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980); *FTC v. Phoebe Putney Health Sys.*, 568 U.S. 216, 225 (2013). "Displacement of competition is foreseeable when the anticompetitive effects are 'the inherent, logical, or ordinary result of the exercise of authority delegated by the state.'" *NFINITYLINK Commc'ns, Inc.*, 2021 WL 2077797, at *2 (quoting *Phoebe Putney Health Sys., Inc.*, 568 U.S. at 229). It is only when those criteria are met will a party be deemed to have antitrust immunity under *Parker*. *Midcal Aluminum, Inc.*, 445 U.S. at 105.

Here, the defendants are immune from antitrust laws because they meet both criteria for *Parker* Immunity as specified in *Midcal Aluminum*. First, the Kentucky Board of Medical Licensure is a product of clearly defined state law and the licensing requirements it has promulgated that Kitchens challenges are not only rules the defendants have issued, but requirements under Kentucky law. The Kentucky General Assembly has articulated that "[i]t is the declared policy of the General Assembly of Kentucky that the practice of medicine . . . should be regulated and controlled . . . to protect the health and safety of the public." Ky. Rev. Stat. Ann. § 311.555; *accord Conrad v. Beshear*, No. 17-cv-00056, 2017 WL 3470917, at *8

(E.D. Ky. Aug. 11, 2017).  To enact these regulations, the Kentucky legislature established the Kentucky Board of Medical Licensure ("KBML"), an independent board tasked with regulating medical and osteopathic licensure. Ky. Rev. Stat. Ann. § 311.530; *see also* Ky. Rev. Stat. Ann §§ 311.530-311.620, 311.990.  The Kentucky Legislature tasked the Board with initial licensing and continuing oversight of practicing physicians in the Commonwealth. Ky. Rev. State. Ann. § 311.595, 311.597.  This is a clear mandate from the General Assembly declaring the Commonwealth intends to actively regulate in this area.

Kitchens makes numerous complaints about various testing and licensing requirements, but the requirements he complains of are rules enacted pursuant to state policy.  Kentucky law prohibits practicing medicine "unless the person holds a valid and effective license or permit issued by the board as hereinafter provided."  Ky. Rev. Stat. § 311.560.  The KBML has the authority to "promulgate reasonable administrative regulations establishing moral, physical, intellectual, educational, scientific, technical, and professional qualifications of applicants for licenses and permits that may be issued by the board."  Ky. Rev. Stat. Ann. § 311.565(1)(a).  The primary way it has chosen to regulate the issuance of medical licenses is by mandating that applicants pass the USMLE.  A licensure test chosen by a state to "serve a *beneficial* role in protecting the health and safety of the public" does not harm the market or patients.  FTC, *Policy Perspectives: Options to Enhance Occupational License Portability* (Sept. 2018).  Kentucky laws and regulations requiring prospective doctors to pass the USMLE simply does not violate antitrust law.

Kitchens also complains about the KBML's differing licensing requirements and fees for medical students who graduated outside of the United States.  But once again, this is an area in which the KBML has chosen to enact valid regulations.  Kentucky law states "[n]o

applicant who is a graduate of a medical . . . school located outside the United States and Canada shall be eligible for a regular license to practice medicine in the Commonwealth unless the applicant [h]as been certified by [ECFMG] or by an approved United States specialty board." Ky. Rev. Stat. Ann. § 311.571 (2)(e).  The KMBL also requires the applicant fulfill "all other reasonable qualifications for regular licensure that the board may prescribe by regulation." Ky. Rev. Stat. Ann. § 311.571 (2)(g). Almost all states require ECFMG certification for international medical graduates seeking medical licensure, and it is not unreasonable for ECFMG to require applicants to pay fees for their licenses.  Thus, Kitchens' complaint of having to obtain ECFMG certification is not properly against the defendants but rather an issue with state law.

The KBML also meets the second requirement for *Parker* immunity as the state is engaged in "active supervision" of the KBML.  *N.C. State Bd. of Dental Exam'rs v. FTC*, U.S. 494, 507 (2015).  The active supervision inquiry is "flexible and context dependent," and "need not entail day-to-day involvement in an agency's operations or micromanagement of its every decision." *N.C. State Bd. of Dental Exam'rs*, 574 U.S. at 515.

United States District Judge Van Tatenhove of this Court recently addressed a similar argument in *Conrad v. Beshear* and found the Kentucky Board of Medical Licensure was adequately supervised for purposes of *Parker* immunity. *Conrad v. Beshear*, 2017 WL 3470917.  In *Conrad*, a physician challenged his recent suspension by the Kentucky Board of Medical Licensure and argued the KBML's authority violated state and federal antitrust laws. The Court however found the KBML was entitled to *Parker* immunity because while the KBML "is authorized to 'promulgate reasonable administrative regulations . . . these regulations undergo a public notice and comment period and require legislative approval." WL

3470917 at *8.  Judge Van Tatenhove further reasoned the KMBL is subject to adequate supervision because the KBML is mostly comprised of members appointed by the Governor, Ky. Rev. Stat. Ann. § 311.530 (2)(f) (eleven of the sixteen members "appointed by the Governor") and the KBML is required by law to submit annual reports to the Governor. *Id.* § 311.545.  Taken together, this supervision is sufficient to demonstrate the KBML meets the second requirement for *Parker* immunity.

**J.     Kitchens' Motion for Leave to File an Amended Complaint will be denied.**

Under Rule 15 of the Federal Rules of Civil Procedure, a plaintiff may freely amend his complaint without leave of court (1) within twenty-one days of serving it; or (2) within twenty-one days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f).  Fed. R. Civ. P. 15(a)(1)(A)-(B).  Outside of those prescribed periods, a plaintiff must seek leave of court.  Fed. R. Civ. P. 15(a)(2).  However, courts should "freely give leave when justice so requires."  *Id.*

While Rule 15 provides discretion to grant leave when justice so requires, "the right to amend is not absolute or automatic."  *Ky. Mist. Moonshine, Inc. v. Univ. of Ky.*, 192 F. Supp. 3d 772, 790 (E.D. Ky. 2016) (citing *Tucker v. Middleburg-Legacy Place, LLC,* 539 F.3d 545, 551 (6th Cir. 2008).  Justice does not require amendment in circumstances of undue delay, dilatory conduct, undue prejudice, or futility.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Halcomb v. Black Mountain Resources, LLC*, 303 F.R.D. 496, 500 (E.D. Ky. 2016).  "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss."  *Review Health Inst. LLC v. Med. Mut. Of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010).  "An amendment to the pleadings may be properly denied when any such amendment would be subject to immediate dismissal."  *England v. Advanced Stores Co.*, No. 07-cv-00174, 2009

WL 10681571, at *4 (W.D. Ky. July 7, 2009).  *Pro se* litigants "are not exempt from the ordinary rules that govern civil practice."  *Qiu v. Bd. of Ed. Of Woodford Cty. Pub. Schools*, No. 5:22-196-DCR, 20234 WL 8099107, *4 (E.D. Ky. Nov. 21, 2023).  It is common practice for courts to deny leave to amend in *pro se* cases where amendment would be futile.  *Shapiro v. Fid Invs. Institutional Operations Co.*, 142 F. Supp. 3d 535, 542 (E.D. Ky. 2015).

Kitchens' motion will be denied for the reasons that follow.

### 1.    The proposed Amended Complaint cannot survive a motion to dismiss.

Far from correcting the defects in the initial complaint and providing a short and plain statement of relief pursuant to Rule 8 of the Federal Rules of Civil Procedure, Kitchens' proposed Amended Complaint expands to 101 pages but compounds many of the same errors that plagued his original Complaint.  The proposed amendment includes sixteen counts: Counts 1, II, and III assert "*per se* Illegal Violations of 15 U.S.C.S. § 1"; Counts IV, V, and VI assert "Violation of 15 U.S.C.S. § 1"; counts VII, VIII, and IX assert "Monopolization of the Medical Licensure Market in Violation of 15 U.S.C. § 2"; counts X, XI, and XII assert "Attempted Monopolization of the Medical Licensure Market in Violation of 15 U.S.C. § 2"; counts XIII, XIV, and XV assert "Violation of 15 U.S.C. § 13(a)"; and count XVI asserts a "Violation of 15 U.S.C. § 7a-3."

The proposed Amended Complaint is far from concise and, despite its length, still lacks a short and plain statement showing that he is entitled to relief.  Kitchens has added even more extraneous and irrelevant background and historical information that does not pertain to any claim he seeks to assert against the defendants.  And he continues to accuse all three defendants of anticompetitive conduct but does so through conclusory statements like "Defendants['] . . .

monopoly over the medical licensure market stifles competition." [Record No. 35, ¶ 151] The proposed Amended Complaint provides no specific examples of actions or steps taken by the defendants that are anticompetitive, only broad assertions that the parties have entered "collaborative agreements" and work together throughout the licensing process. He also fails to demonstrate any collusive conduct on the part of the defendants, the closest being that the defendants have entered into agreements and share office space. [Record No. 35, ¶ 23] Again, this leaves the Court guessing with respect to the conduct the defendants have taken that is anticompetitive.

Substantively, many of the issues that plagued Kitchens' original Complaint are present and, in many instances, exaggerated in his Proposed Amended Complaint. As a threshold matter, all of Kitchens' claims against NBME are still barred under the doctrine of *res judicata* as they should have been raised in Kitchens' first lawsuit against NBME. *See Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 573 (6th 2008) ("It is well settled that leave to amend is properly denied when the proposed amendment would not overcome a *res judicata* bar to a plaintiff's claims."). Regarding the other defendants, and assuming for the sake of argument the claims were not precluded, Kitchens still fails to provide a sufficient basis for an antitrust claim.

The first substantive change from Kitchens' original Complaint is that, in addition to his previous allegations that the defendants violated Section 1, he alleges the defendants have committed *per se* violations of Section 1. As previously discussed, courts have held only a small handful of actions to be *per se* illegal under antitrust law, and Kitchens has not alleged that any of that kind of activity has taken place. In support, Kitchens repeatedly states the defendants entered into "collaborative agreements" but does not explain how these agreements

- 24 -

amount to, *per se*, Section 1 violations.  He does not make any other allegations of *per se* antitrust violations.  As a result, these three claims would not survive a motion to dismiss.

Kitchens also seeks to bring a new claim for a "Violation of 15 U.S.C. § 7a-3" against NBME.  But even if not barred by *res judicata*, this claim could not survive a motion to dismiss.  Section 7a-3(1) states that "[n]o employer may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against a covered individual in the terms and condition of employment of the covered individual because of any lawful act done by the covered individual. . . .  [t]o provide or cause to be provided to the Federal Government . . . information relating to – any violation of, or any act or omission the covered individual reasonably believes to be a violation of, the antitrust laws."  15 U.S.C. § 7a-3.

Kitchens cannot recover under this statute.  First, the statute prescribes that a complainant must first seek relief with the U.S. Secretary of Labor, but Kitchens does not claim that he has done so.  Second, the statute only applies to *employees*, and Kitchens is neither employed by the NBME nor has he worked as a contractor for NBME.  Finally, Kitchens alleges that the NBME retaliated against him for reporting the NBME's antitrust violations by filing this lawsuit.  [Record No. 35 at ¶ 540] Kitchens alleges, without any evidence, that the NBME has manipulated his "[s]tep Examination results from passing to failing;" "[m]anipulat[ed] USMLE score data," and has "[i]ntentionally or with gross disregard for Kitchens professional career and reputation" taken the following actions: falsely accused him of malingering in public legal proceedings, publicized his USMLE ID number in public legal proceedings, mischaracterized and/or misrepresented the results of Kitchens' prior USMLE Step Examination attempts in public legal proceedings and publicized his most recent USMLE score results before his receipt of the USMLE Score Report in public legal

proceedings. [Record No. 35 at ¶ 540] Kitchens has provided no basis for his accusation that the NBME has manipulated his exam scores or that they have taken actions to tarnish his professional reputation in legal proceedings.

The remainder of Kitchens' claims largely mirror those in his original Complaint and remain futile. The proposed Amended Complaint slightly changes the market definition from "administration of the [USMLE]" or alternatively, "the administration of the [USMLE] and assessment tools similar to the USMLE" to the "medical licensure market." [Record No. 35 at p. 20] But as was the case with Kitchens' first attempt at market definition, the "medical licensure market" is not a cognizable antitrust market because it is a product of Kentucky law and therefore immune from antitrust liability under the doctrine of *Parker* immunity. He has also failed to show the defendants have engaged in exclusionary conduct in the market and that any of the licensing procedures and policies defendants put forth harm consumers beyond requiring them to abide by state law.

Finally, Kitchens' price discrimination claims could not survive a motion to dismiss because, once again, he has not described actionable goods or commodities and because the services he describes are not "of like grade and quality." The services the defendants provide are exactly that: services. They are not goods as defined under antitrust laws.

## 2. Kitchens unduly delayed seeking to amend his Complaint.

While leave to amend a complaint should be freely granted "when justice so requires," justice does not require amendment in circumstances of undue delay, dilatory conduct, undue prejudice, or futility. *Ky. Mist Moonshine, Inc. v. Univ. of Ky.*, 192 F. Supp. 3d 772, 790-92 (E.D. Ky. 2016); *Seals v. Gen. Motors Corp.*, 546 F.3d 766, 770 (6th Cir. 2008); *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 551 (6th Cir. 2008). A plaintiff engages in

undue delay "where the facts or allegations sought to be added to a complaint were available at the time of the initial complaint," but the plaintiff failed to act promptly. *Secamiglio v. Baker*, No. 20-cv-00305, 2024 WL 2275235, at 2* (E.D. Ky. May 20, 2024) (citing *Doe v. Mich. State Univ.*, 989 F.3d 418, 426 (6th Cir. 2021)). Allegations and facts which were known at the time the plaintiff brought the complaint "could have—and should have—been raised from the beginning. Absent some justification for the earlier omission . . . there is sufficient basis to find undue delay." *Secamiglio*, 2024 WL 2275235, at *2. *See also Doe v. Michigan State University*, 989 F.3d 418, 426 (6th Cir. 2021) (finding undue delay where a plaintiff failed to offer reasoning for omitting facts when he first amended his complaint that were available to him when he first amended it.)

Kitchens filed his initial Complaint on June 6, 2024. [Record No. 1] The defendants filed their motions to dismiss on August 5 and 7, 2024. [Record Nos. 13, 16, and 21] Kitchen opposed all three motions to dismiss [Record No. 29, 30, and 31] and the defendants filed their replies on September 9 and 11, 2024. [Record No. 32, 33, and 34] On November 21, 2024, seventy-one days later, Kitchens sought leave to file a proposed First Amended Complaint. [Record No. 35]

As discussed previously, Kitchens' Proposed amended Complaint is lengthy, containing extensive irrelevant background and historical information. Most relevant for the present analysis, it does not appear that Kitchens' proposed pleading contains any information unknown to him or that he could not have reasonably learned when he filed this action. Kitchens fails to explain why the additional material was omitted from his original Complaint, and he does not offer a reason for waiting seventy-one days before seeking leave to file it.

Instead, the only explanation he provides is to "correct[] deficiencies in the original Complaint pointed out in [defendants'] motion."  [Record No. 35]

### III.  Conclusion

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.    Defendants National Board of Medical Examiners, Educational Commission for Foreign Medical Graduates, and the Federation of State Medical Boards' motion to dismiss for failure to state a claim [Records No. 16, 21, and 28] is **GRANTED.**

2.    The plaintiff's claims for violation of Section 2 of the Sherman Act 15 U.S.C. § 1 against all three defendants (Counts 1-3), violation of Section 2 of the Sherman Act 15 U.S.C. § 2 against all three defendants (Counts 4-6), and violation of Section 1 of the Sherman Act, 15 U.S.C. § 13 (Counts 7-9) are **DISMISSED.**

3.    The plaintiff's motion for leave to file an Amended Complaint [Record No. 35] is **DENIED**.

Dated: January 28, 2025.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky

- 28 -